IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| v. ) | Criminal No. 1:20CR13 |
| ) | Sentencing Date: September 29, 2020 |
| JEREMY BRUCE JONES, ) | The Honorable Liam O'Grady |
| Defendant. ) | |

POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS

Pursuant to Rule 32 of the *Federal Rules of Criminal Procedure*, Section 6A1.3 of the advisory *United States Sentencing Guidelines* (the "Guidelines"), and this Court's Policy Regarding Procedure to be Followed in Guideline Sentencing, the Defendant, Jeremy Bruce Jones Jones, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case and its Addendum and he offers some minor corrections and objections thereto. Furthermore, Defendant asserts that the mandatory minimum sentence of 60 months is sufficient to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

CORRECTIONS AND OBJECTIONS

1) <u>Objection to the statement that multiple witnesses suffered drug overdoses as a result of the heroin and/or fentanyl they obtained from Jones</u>.  PSR ¶ 12.

   Defendant Jones maintains that only Brianna Beatty suffered an overdose as a result of heroin obtained from him.  The probation officer who prepared the Addendum agrees that Brianna Beatty is the only identified victim who suffered a fatal overdose but adds that paragraph 3 of the Statement of Facts describes how another individual, J.Z., suffered serious bodily injury after purchasing drugs from the defendant.  However, the relevant portion of paragraph 3 reads, "On or about March 19, 2016, the defendant and J.Z.'s sister

1

procured heroin and/or fentanyl from a supplier. Unbeknownst to the defendant at the time, J.Z. later consumed some of the substance, which resulted in serious bodily injury to J.Z." SOF ¶3, PSR ¶19. Nowhere in the Statement of Facts does it say that the defendant sold or gave any drugs to J.Z. on March 19, 2016. Defendant is not personally aware how J.Z. came into possession of the narcotics that he overdosed on, but he suspects he obtained them from J.Z.'s sister. Defendant is not responsible for any overdose that J.Z. suffered on March 19, 2016, because he did not sell or provide any drugs to J.Z. on that date.

2) <u>Objection to the Government's contention that Defendant's Criminal History Category should be Category III.</u> Position of the Government 1, 11-12.

The Defendant agrees that Probation has correctly calculated Defendant's Criminal History as Category I. In the first disclosure of the PSR, the Defendant objected to the assessment of criminal history points for the Defendant's prior Distribution of a Schedule I/II Controlled Substance (Fentanyl) in Prince William County, date of arrest June 8, 2016. PSR ¶55. The objection was based on the fact that the drug felony from Prince William was relevant conduct to the instant offense.

Count One of the Superseding Criminal Information charges that beginning in and around 2016, and continuing thereafter up to and including March 14, 2019, in Prince William County, within the Eastern District of Virginia, and elsewhere, the Defendant, did unlawfully, knowingly, and intentionally combine, conspire, confederate and agree…to unlawfully, knowingly and intentionally distribute:

    a. 100 grams or more of a mixture and substance containing a detectable amount of heroin, and

    b. fentanyl.

    Count One of the Superseding Criminal Information not only covers the same time period as Defendant's arrest on June 8, 2016, it also occurred in Prince William County and also involved fentanyl. The fact that the prior case involved fentanyl is significant because it is for that charge alone that Defendant was ever found to be involved with fentanyl. Defendant fully believed that he was distributing heroin in 2016 and the fact that the substance was found to be fentanyl was shocking to the Defendant. Throughout the statement of facts, the Government used heroin and/or fentanyl in describing substances that the Defendant distributed in 2016. Because the certificate of analysis from the 2016 Prince William County case showed that the substance that the Defendant distributed, was in fact, fentanyl, the defendant could not object to the use of the wording heroin and/or fentanyl during that timeframe. In 2019, the Defendant only dealt with heroin. For these reasons, Probation determined that the 2016 prior conviction from Prince William County was relevant conduct to the instance offense and did not assess a criminal history point.

    Because no points were assessed for the 2016 conviction, Probation could not assess 2 criminal history points for committing the instant offense while under any criminal justice sentence under USSG §4A1.1(d). A "criminal justice sentence" is defined in Application Note 4 as "a sentence countable under §4A1.2". USSG §4A1.1, Application Note 4.

    Therefore, the only criminal history point that remained was from Defendant's conviction for misdemeanor assault in 2014. Thus, his criminal history category was correctly calculated as a I.

3

3) <u>Correction to the date of September 12, 2020, in paragraph 1 of the PSR.  The criminal complaint and affidavit were filed on September 12, 2019.</u>

<u>APPLICATION OF SENTENCING FACTORS PURSUANT TO 18 U.S.C. § 3553(a)</u>

The Sentencing Reform Act, 18 U.S.C. § 3551, contains an "overarching instruction" that district courts must impose sentences "sufficient but not greater than necessary" to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). These statutory sentencing goals include retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"), deterrence and incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

In fashioning a sentence designed to meet those goals, however, the Court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Accordingly, section 3553 directs courts to consider: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public

from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

The Sentencing Guidelines provide only a "rough approximation" of what might constitute an appropriate sentence in a given case. *Rita v. United States*, 551 U.S. 338, 350 (2007). As such, the Court may consider not only individual and unique circumstances about a particular case to determine whether a Guideline sentence would be "greater than necessary" to accomplish the purposes of sentencing, but also whether the advisory Guideline simply reflects an "unsound judgment." *Kimbrough*, 128 S. Ct. at 575.

    a. **A sentence of 60 months is appropriate, given the nature and circumstances and the seriousness of the offense**

Jeremy Jones has admitted his involvement in a conspiracy to distribute heroin and fentanyl, dating back to 2016 and continuing until his arrest in March of 2019. Mr. Jones primarily acted as a middleman between dealers and users of heroin. He was a heroin user himself and would hook up users to distributers in order to get heroin to feed his own addiction. Mr. Jones received very little financial profit from this conspiracy and his offense involved no weapons, no threats and no intimidation.

Mr. Jones' actions in helping addicts to procure heroin had one particularly tragic consequence. Brianna Beatty, a friend of Mr. Jones and fellow heroin addict, died on March 14, 2019. The medical examiner determined that the cause of Beatty's death to be mixed drug (Heroin, Codeine, Alprazolam, Oxazepam and Diphenhydramine) intoxication. The report of autopsy noted that the decedent had a history of drug abuse and depression. The manner of death was accident. The autopsy also noted that in addition to the drugs noted above, the postmortem toxicology performed also showed the decedent's blood contained alpha-

hydroxyalprazolam, 7-aminoclonazepam, quetiapine, paroxetine and benztropine.

It was not the use of heroin alone that killed Brianna Beatty. It was the synergistic effect of all the other drugs in her system plus the heroin she ingested. But for all the other medications already present in Beatty's body, it is our contention that her heroin use alone would not have been enough to kill Ms. Beatty. Another important factor in Ms. Beatty's overdose was the fact that she had recently been in rehab and had not used heroin for more than 1 month prior to her overdose death. This effected Ms. Beatty's tolerance and her body's ability to handle the amount of heroin she ingested, along with all the other drugs in her system.

### b. A sentence of 60 months of incarceration would take into consideration the history and characteristics of Jeremy Jones

31-year-old Jeremy Jones comes from a large, albeit unsupportive, family. He was raised by both parents and is one of 12 children. His childhood was marred by poverty and occasional homelessness. Jeremy escaped to drugs, starting as early as age 12. He was expelled from high school in either 10th or 11th grade due to truancy. Jeremy later earned his GED.

Jeremy has had a lackluster employment history, working as a telemarketer and sales advisor for various companies over the years. But as his drug use and abuse escalated, he was not able to maintain steady employment.

It is Jeremy's substance use and abuse that has defined his life to date. In 2015, Jeremy was introduced to heroin and his life has basically been in a downward spiral ever since. He suffered 6 life-threatening heroin/opioid overdoses between February 2, 2015 and June 6, 2016. Then he was arrested for the Distribution of Fentanyl charge in Prince William County on June 8, 2016. Mr. Jones was subsequently charged with Possession of Controlled Substances in Stafford County.

Even though the Stafford charge was eventually dismissed by nolle prosequi, Mr. Jones spent at least 4 months in jail. When he was released at the end of 2016, Jeremy was able to stay away from heroin entirely for at least 2 years. Jeremy met with some personal challenges, including the death of his best friend in a car accident, and succumbed again to heroin's power over him. Jeremy's last overdose was on January 11, 2019. Since he has been incarcerated since March 22, 2019, Jeremy has finally been able to maintain sobriety. He is now clear-headed and looking forward to participating in substance abuse treatment during the remainder of his sentence and after his release.

Jeremy Jones is remorseful about the death of his friend Brianna Beatty. We would ask the Court to take his heartfelt letter to the Court into consideration, which is attached to this position as Exhibit 1.

### c. A sentence of 60 months would consider the guidelines and would avoid unwarranted disparities in sentencing

The advisory Sentencing Guideline range in this case is the mandatory minimum of 60 months on Count 1 and 46-57 months on Count 2. Mr. Jones' base offense level was 26 based on the stipulated drug amount, with no other enhancements. 3 points were subtracted for acceptance of responsibility. Mr. Jones has 1 criminal history point for a prior misdemeanor assault and therefore is a criminal history category I.

It is important to note that only one person in a related case has been sentenced as of the date of the drafting of this position paper. Ronald Maxwell Gorham (1:19cr320) was a major supplier of fentanyl. Mr. Gorham pled guilty to Conspiracy to Distribute 40 grams or more of Fentanyl. Mr. Gorham had a significant criminal history to include first-degree murder and armed robbery convictions and an almost 28-year prior prison sentence. Mr. Gorham's guideline range was 60-71 months and he was sentenced to serve 66 months of incarceration in

the Bureau of Prisons.

Sentencing Mr. Jones to a sentence of equal or less duration to that of Mr. Gorham, who was a much bigger supplier and has a significant prior criminal history, would help to avoid unwarranted sentencing disparities.

**d. A sentence of no more than 60 months will provide a just punishment as well as promote respect for the law and serve to deter Jeremy Jones from unlawfully distributing controlled substances.**

A sentence of 60 months is a severe punishment and will serve to deter Mr. Jones from unlawfully using and distributing controlled substances. Such a sentence is a sufficient punishment, but not greater than necessary, especially given Mr. Jones' lack of prior incarcerations. As the Second Circuit has noted, a defendant who has not previously been sentenced to incarceration, or has been sentenced to minimal incarceration, might very well be deterred by a lesser amount of incarceration than someone who has shown themselves to be undeterred by a lengthy sentence. See U.S. v. Mishow, 241 F.3d 214, 220 (2d Cir. 2001).

Upon release from confinement, Mr. Jones will continue to have restrictions on his liberty. Supervised release will allow the Court to ensure that Mr. Jones is receiving the substance abuse treatment he needs in order to prevent any further unlawful activity.

**e. A sentence of 60 months will provide Jeremy Jones with needed educational, vocational or correctional treatment in the most effective manner.**

Mr. Jones has a significant history of substance abuse, beginning when he was only 12 years old. It was this addiction that was the primary cause of the instant offense. Mr. Jones has never benefitted from any significant substance abuse treatment in the past. Mr. Jones appreciate the opportunity to participate in substance abuse treatment and counseling and would

ask the Court to recommend him for the BOP's 500-hour intensive drug program (RDAP).

Mr. Jones could also clearly benefit from any educational opportunities afforded to him as well as vocational training.

Credit for Time Served

Jeremy Jones has been continually held in custody since his arrest in Prince William County on March 22, 2019. PSR ¶69. Defendant's arrest on those charges related to the Defendant's conduct comprising the counts of conviction in the instant matter. PSR ¶69. The charges the Defendant was arrested on were eventually nolle prosequi by the Commonwealth of Virginia and, instead, the Defendant was prosecuted in the Eastern District of Virginia. 18 U.S.C. §3585 states that "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences…as a result of the offense for which the sentence was imposed…that has not been credited against another sentence." 18 U.S.C. § 3585(b)(1). Mr. Jones would ask the Court to specifically state in its Judgement Order that he be given credit for time spent in state custody from March 22, 2019, until his custody was transferred to the custody of the U.S. Marshal on October 7, 2019.

## CONCLUSION

A 60-month sentence is more than sufficient to comply with factors set out in 18 U.S.C. § 3553(a). A sentence of 60 months would reflect the seriousness of the offense, promote respect for the law, provide just punishment, accomplish specific and general deterrence, and provide much needed substance abuse treatment. Accordingly, Mr. Jones respectfully requests that this Court impose a sentence of no more than 60 months imprisonment.

Respectfully submitted,

JEREMY JONES

By:       /s/
Gretchen Lynch Taylor
Virginia Bar #39087
Attorney for Jeremy Jones
Taylor Law Company
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: 703-385-5529
Fax: 703-934-1004
gretchen@taylorlawco.com

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2020, I will file the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

A copy of the foregoing pleading will also be served by e-mail to:

Karen Riffle
Bethany Erding
Supervising U.S. Probation Officers
401 Courthouse Square
Alexandria, Virginia 22314
karen_riffle@vaep.uscourts.gov
bethany_erding@vaep.uscourts.gov

```
                              /s/
```
Gretchen Lynch Taylor
Virginia Bar #39087
Attorney for Jeremy Jones
Taylor Law Company
10605 Judicial Drive, Suite A-5
Fairfax, Virginia 22030
Phone: 703-385-5529
Fax: 703-934-1004
gretchen@taylorlawco.com

11